**SO ORDERED**

**SIGNED this 22 day of January, 2026.**

**Pamela W. McAfee**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SOUTHERN EXPRESS INC. | ) | Case No. 25-02978-5-PWM |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## ORDER CONFIRMING PLAN

The Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by the Debtor on December 3, 2025 (the "Plan"), or a summary thereof, having been transmitted to creditors and a Hearing on Approval of the Debtor's Disclosure Statement (the "Disclosure Statement") and Confirmation of the Plan having been conducted at the United States Bankruptcy Court in Raleigh, North Carolina on January 21, 2026, and

The Court being advised as to the acceptance by classes of impaired claims of such Plan, and having considered the statements, affidavits and evidence presented by counsel for the Debtor and the Bankruptcy Administrator;

NOW, THEREFORE, the Court makes the following findings of fact and conclusions of law:

1.    The Plan complies with the provisions of Chapter 11 of the Bankruptcy Code, including, but not limited to the confirmation requirements of Section 1129(a), except Section 1129(a)(8), as every impaired class has not accepted the Plan.

2.      The Plan does not discriminate unfairly, and is fair and equitable, with respect to each of the impaired classes that have not accepted the Plan. The requirements of Section 1129(b) are, therefore, satisfied.

It having been determined after hearing on notice that the applicable requirements for confirmation set forth in Section 1129 of the Bankruptcy Code have been satisfied;

IT IS ORDERED THAT:

1.      The Disclosure Statement filed by the Debtor on December 3, 2025 is APPROVED.

2.      The Plan is CONFIRMED under the "cramdown" provisions of Section 1129(b), subject to the modifications set forth in the attached **Exhibit "A"** of this Order.

3.      To the extent any language in the Plan is inconsistent with the provisions of this Order, including but not limited to the language found in Section I. of the Plan, the provisions of this Order shall govern.

4.      All objections to claims, fee applications and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date, subject to the right of the Debtor to seek extension from the Court; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.  Further, no professional shall be required to seek Court approval for fees incurred following the entry of the Order Confirming Plan.

5.      The Debtor shall file Post-Confirmation Reports with the Clerk of Court and pay quarterly fees pursuant to Section 1106(a)(7) with a copy served upon the Bankruptcy Administrator.  The first report shall be due on the earliest of September 30, December 31, March 31 or June 30 in the Calendar year in which this Plan is confirmed.  The Debtor shall file subsequent reports at the end of every succeeding quarter (March 31, June 30, September 30 or December 31), until the Plan is substantially consummated.  Quarterly Reports shall reflect any progress made in consummating the Plan during the period covered by the report.  Post-Confirmation Reports shall be filed in the format prescribed by the Bankruptcy Administrator.

6.      Within thirty (30) days of substantial consummation of the Plan, as defined by Section 1101(2), the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each class of creditor, and a motion for the entry of a Final Decree pursuant to Rule No. 3022, F.R.B.P.  If there are any adversary proceedings pending at the time the motion for a final decree is filed, a final decree can be entered, but closing of the bankruptcy case will be deferred until the adversary proceedings are resolved.

7.      The Debtor shall pay to the Clerk, United States Bankruptcy Court, the sum of $0.00 for court costs.  The Debtor shall continue to pay quarterly fees until it receives its Final Decree.

8.       The Debtor shall serve a copy of this Order on all creditors within five (5) days of the entry of this Order and promptly file a Certificate of Service with the Clerk.

**<u>END OF DOCUMENT</u>**

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SOUTHERN EXPRESS INC. | ) | Case No. 25-02978-5-PWM |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**PLAN OF REORGANIZATION**
**December 3, 2025**

**HENDREN, REDWINE & MALONE, PLLC**

s/ Lydia C. Stoney
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Stoney (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone:  (919) 573-1422
Facsimile:  (919) 420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com
        bwaller@hendrenmalone.com
        lstoney@hendrenmalone.com
COUNSEL FOR THE DEBTOR

TABLE OF CONTENTS

I.      Summary of Plan.................................................................................................4

II.     Definitions........................................................................................................4

III.    Treatment of Administrative and Priority Tax Claims ................................6
        a.  Administrative Claims.......................................................................6
        b.  Priority Tax Claims............................................................................7

IV.     Classification and Treatment of Claims and Interests ................................7
        Class I – Priority Non-Tax Claims..........................................................7
        Class II – U.S. Small Business Administration ("SBA") .........................7
        Class III – Capital Bank, N.A. ("Capital Bank")...................................8
        Class IV – Regions Bank d/b/a Ascentium Capital ("Ascentium")..........8
        Class V – Kapitus, LLC ("Kapitus")......................................................9
        Class VI – M&T Capital and Leasing Corporation ("M&T Capital") .................10
        Class VII – Volvo Financial Services, a division of VFS US, LLC ("VFS") .......10
        Class VIII – Flagstar Financial & Leasing, LLC ("Flagstar").............................10
        Class IX – Stearns Bank, N.A ("Stearns Bank"). ..................................11
        Class X – General Unsecured Claims ...................................................11
        Class XI – Equity Security Holders .......................................................11

V.      Allowance and Disallowance of Claims ……………………………….....12

VI.     Means for Implementation and Execution .........................................12

VII.    Preservation of Claims and Avoidance Actions ...................................14

VIII.   Provisions Governing Distributions ……………………………………15

IX.     Treatment of Executory Contracts and Unexpired Leases ...................16

X.      Acceptance or Rejection of Plan..........................................................16

XI.     "Cramdown" for Impaired Creditors Not Accepting the Plan..............18

XII.    Effect of Confirmation .......................................................................19

XIII.   Application of Plan Payments .............................................................19

XIV.    Retention of Jurisdiction.....................................................................19

XV.     Miscellaneous Provisions....................................................................20

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **SOUTHERN EXPRESS INC.** | ) | **Case No. 25-02978-5-PWM** |
| | ) | |
| Debtor. | ) | **Chapter 11** |
| | ) | |

## PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, Southern Express, Inc., hereby submits the following Plan of Reorganization:

## I. SUMMARY OF PLAN

The Debtor is a North Carolina corporation that was founded in 2010. The Debtor is a motorcoach transportation company located in Apex, North Carolina that provides transportation services across the United States to a variety of clients and customers, including, among others, collegiate athletics teams, entertainers and performers, military groups, utilities companies, and various private charter clients.

The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize. Payments to creditors shall be made from the proceeds of the Debtor's continued operations.

The Debtor will pay administrative expenses in full as set forth more fully herein or upon such other mutually acceptable terms as the parties may agree. Any and all priority taxes due and owing to the Internal Revenue Service, N.C. Department of Revenue, or any other state, county, or city taxing authority shall be paid in full as set forth more fully herein. The Debtor will treat the claims of its secured creditors as outlined more fully herein. In accordance with the liquidation analysis attached to the Disclosure Statement as Exhibit "C", the Debtor will pay all allowed unsecured claims as outlined more fully herein.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

## II. DEFINITIONS

1. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

2.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

3.      "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

4.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

5.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

6.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

7.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

8.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

9.      "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10.      "DEBTOR" shall mean Southern Express, Inc.

11.      "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

12.      "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

13.      "EFFECTIVE DATE" shall be the date that is the later of fifteen (15) days following entry of the Confirmation Order or five (5) days after the resolution of claim objections, if any.

14.      "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

15.      "IMPAIRED" classes of creditors are those whose claims or interests are altered by

4

the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

16. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, August 5, 2025.

17. "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

18. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

19. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

20. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

21. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to creditors.

22. "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

23. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

## III.    TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

a. <u>Administrative Claims</u>.    Except to the extent the holder of an allowed Administrative claim agrees otherwise, each holder of an allowed Administrative claim shall be paid in cash (or such other form as is agreed upon by any holder of an allowed Administrative claim) and in full as soon as practicable after the later of (a) the Effective Date or (b) the date on which such claim becomes an allowed administrative claim, except that allowed administrative claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

EXCEPT FOR COURT APPROVED PROFESSIONALS, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN THIRTY DAYS (30) OF THE DATE OF THE CONFIRMATION ORDER.   OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE DEBTOR AT ANY TIME.

b. <u>Priority Tax Claims</u>.  The Debtor proposes to pay these claims in full in monthly installments over a period not exceeding five (5) years from the date of the Order for relief. Monthly payments shall commence on the fifteenth (15th) day of the first full calendar quarter following the Effective Date and shall include interest at the rate set by Internal Revenue Code Sections 6601 and 6621.  Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.  Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed.  These claims shall be reduced by any post-petition payments paid on the pre-petition claims.

## IV.  <u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Section III describes the treatment of Administrative Claims and Priority Tax Claims.  For the purposes of this Plan, Holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code:

A.  <u>**Class I – Priority Non-Tax Claims**</u>.

(1)  <u>Description of Class</u>.  This Class consists of all Allowed Priority Claims that have not been paid by the Debtor, other than Priority Tax Claims and Administrative Claims.  The Debtor does not believe there are any Claims in this Class.

(2)  <u>Impairment</u>.  This class will be impaired.

(3)  <u>Treatment</u>.  On the Effective Date, the holders of Allowed Claims in this Class shall receive (a) all amounts to which such holder is entitled on account of such Allowed Claim on the later of (i) the Effective Date or (ii) the date when such Allowed Claim becomes due and payable according to its terms and conditions, or (b) such other, less favorable treatment as is agreed upon by the Debtor and the holder of such Allowed Priority Non-Tax Claim.  The Debtor does not believe there are any Claims in this class.

B.  <u>**Class II – U.S. Small Business Administration ("SBA")**</u>.

(1)  <u>Description of Class</u>.  The Debtor is indebted to the U.S. Small Business Administration pursuant to an Amended Loan Agreement dated approximately dated approximately May 14, 2020, bearing Effective date February 11, 2022, in the total principal amount of $2,000,000.00 (the "SBA Note"), and UCC-1 Financing Statement, File No. 20200059974K filed with the North Carolina Secretary of State on May 23, 2020. Upon information and belief, as of the petition date, the SBA was owed approximately $$1,950,420.51. As of the date of this plan filing, the SBA has not filed a proof of claim.

(1)  <u>Impairment</u>.  This class will be impaired.

(2)  <u>Treatment</u>.  This claim shall be treated as a secured claim of the Debtor in the

amount of $158,258.51. The SBA shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay the SBA's claim over ten (10) years, with interest accruing at the contract rate of 3.75% per annum. Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $1,583.55. The balance of the SBA's claim shall be treated as a general unsecured claim in Class X herein.

    **C.**    **Class III - Capital Bank, N.A. ("Capital Bank").**

    (1)    <u>Description of Class</u>. The Debtor is indebted to Capital Bank, N.A. pursuant to a Note dated approximately January 2, 2020, in the total principal amount of $2,987,600.00 (the "Capital Bank Note"). On January 8, 2020, Capital Bank filed a UCC-1 Financing Statement, File No. 20200002653 with the North Carolina Secretary of State (the "Capital Bank UCC"). Capital Bank holds title to nineteen (19) of the Debtor's motorcoaches as collateral for the Capital Bank Note. On December 12, 2025, Capital Bank filed a proof of claim, Claim No. 38, asserting a secured claim in the total amount of $1,900,000 and an unsecured claim in the amount of $466,757.40, for a total claimed amount of $2,366,757.40.

    (2)    <u>Impairment</u>. This class will be impaired.

    (3)    <u>Treatment</u>.

    a.    **Sale and Surrender of Certain Vehicles**: Pursuant to orders of this Court dated November 7, 2025, D.E. 77, and December 10, 2025, D.E. 97, the Debtor sold nine (9) vehicles to which Capital Bank previously held a lien on title, and the associated sale proceeds of $65,000.00 were directed to Capital Bank.

    b.    Additionally, the Debtor has surrendered the following four (4) vehicles to Capital Bank:

| | | | |
|---|---|---|---|
| 2007 | Setra | S-417 | **WKKA34CD763000398** |
| 2007 | Setra | S-417 | **WKKA34CD063000338** |
| 2006 | Setra | S-417 | **WKKA34CD973000387** |
| 2006 | Setra | S-417 | **WKKA34CD463000388** |

Capital Bank shall be entitled to sell the surrendered vehicles and apply the net proceeds to its claim. Capital Bank shall amend its proof of claim to reflect the receipt of the net proceeds within thirty (30) days following the closing date of the sale of the above-listed vehicles.

    c.    **Treatment of Remaining Secured Claim:** The Debtor shall retain the following vehicles to which Capital Bank holds title:

| Year | Make | Model | **VIN** | **Fair Market Value** |
|---|---|---|---|---|

| 2016 | Prevost | H3-45 | 2PCH33492GC713229 | $210,000 |
|------|---------|-------|-------------------|----------|
| 2016 | Prevost | H3-45 | 2PCH33499GC713230 | $190,000 |
| 2016 | Prevost | H3-45 | 2PCH33492DC712142 | $250,000 |
| 2014 | Prevost | H3-45 | 2PCH33495EC712573 | $200,000 |
| 2018 | Prevost | H3-45 | 2PCH33498JC710066 | $300,000 |
| 2018 | Prevost | H3-45 | 2PCH33494JC710100 | $300,000 |

The above obligations shall be treated as secured obligations of the Debtor in the amounts set forth in the chart above. The total amount of Capital Bank's secured claim shall be $1,450,000.00. Capital Bank shall retain its liens on these vehicles pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claims are paid in full. The Debtor shall amortize and pay Capital Bank's claims over seven (7) years, with interest accruing at seven percent (7.0%) per annum. Quarterly payments shall commence on the thirtieth (30th) day of March 2026, in the approximate total amount of $65,948.20. The balance of Capital Bank's claim, as amended to reflect the net proceeds of sold vehicles and surrendered vehicles, shall be treated as a general unsecured claim in Class X herein.

**D.    Class IV- Regions Bank d/b/a Ascentium Capital ("Ascentium").**

(1)    Classification.  The Debtor is a party to a certain Equipment Finance Agreements with Ascentium as follows:

a.    Equipment Finance Agreement No. 2804086 dated approximately October 7, 2024 for the purchase of a 2024 Ford E450 bearing VIN ending in 7118 and a 2024 Terra Transit Turtle Top bearing VIN ending in 9062 (the "First Ascentium Contract").  This loan is secured by a properly perfected purchase money lien on the subject vehicles.  As of the date of this plan filing, Ascentium has not filed an associated proof of claim.

b.    Equipment Finance Agreement No. 2632688 for the purchase of a 2007 Prevost Entertainer bearing VIN ending in 9126 (the "Second Ascentium Contract"). This loan is secured by a properly perfected purchase money lien on the subject vehicle.  As of the date of this plan filing, Ascentium had not filed an associated proof of claim.

(2)    Impairment.    This class will be impaired.

(2)    Treatment.

**a.**    This obligation shall be treated as a secured obligation of the Debtor in the total amount of $340,000. Ascentium shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor shall amortize and pay Ascentium's claim over five (5) years, with interest accruing at a fixed rate equal to 4.27%. Monthly payments shall commence on the first (1st) day of the first full month following the Effective

8

Date, in the approximate amount of $6,303.13.

**b.** This obligation shall be treated as a fully secured obligation of the Debtor. Ascentium shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay Ascentium's claim over thirty-six (36) months, with interest accruing at a fixed rate equal to 4.27%. Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $652.17.

### E.    Class V - Kapitus, LLC ("Kapitus").

(1)    Description of Class. The Debtor is indebted to Kapitus, LLC ("Kapitus") pursuant to a Loan Agreement dated approximately June 17, 2025 (the "Kapitus Agreement"). Kapitus, through CT Corp, as representative, filed a UCC-1 Financing Statement, File No. 20250097757F, with the North Carolina Secretary of State on July 1, 2025 (the "Kaptius Financing Statement"). As of the date of this plan filing, Kapitus has not filed a proof of claim.

(2)    Impairment. This class will be impaired.

(3)    Treatment. Kapitus' claim will be treated as a general unsecured claim in Class X herein, as there is no collateral available to secure this claim after senior security interests. Within thirty (30) days of the Effective Date, Kapitus shall terminate the Kapitus Financing Statement. If Kapitus fails to timely terminate the Kapitus Financing Statement, then the Debtor shall be authorized and entitled to terminate the Kapitus Financing Statement on behalf of Kapitus.

### F.    Class VI - M&T Capital and Leasing Corporation ("M&T Capital").

(1)    Classification. The Debtor is a party to a certain Master Loan and Security Agreement with M&T Capital dated October 28, 2024 for the purchase of a 2025 Prevost H3-45 bearing VIN ending in 1203 (the "M&T Contract"). This loan is secured by a properly perfected purchase money lien on the subject vehicle. On December 15, 2025, M&T Capital filed a proof claim, asserting a secured claim in the total amount of $615,000. Claim No. 43.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.  This obligation shall be treated as a secured claim of the Debtor in the total amount of $615,000.00. M&T Capital shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The Debtor shall amortize and pay M&T Capital's claim over seventy (70) months, with interest accruing at the rate of six percent (6.0%) per annum, and with a final balloon payment equal to twenty percent (20%) of the original secured claim (or $123,000.00) to be made on the first day of the seventieth (70th) month. Monthly payments shall commence on the first (1st) day of the first full month following the Effective Date, in the approximate amount of $9,071.00.

**G.**    **Class VII- Volvo Financial Services, a division of VFS US, LLC ("VFS").**

(1)    Classification.    The Debtor is a party to a certain Master Loan and Security Agreement with Volvo Financial Services, a division of VFS US, LLC ("VFS") dated September 16, 2021, for the purchase of a 2017 Prevost H3-45 bearing VIN ending in 3910 (the "VFS Contract").  This loan is secured by a properly perfected purchase money lien on the subject vehicle.  According to its filed proof of claim, Claim No. 28, as of the Petition Date, the outstanding balance owing to Volvo was $107,880.33.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.    This obligation shall be treated as a fully secured obligation of the Debtor. Volvo shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor shall amortize and pay Volvo's claim over four (4) years, with interest accruing at a fixed rate equal to 4.27%.  Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $2,448.89.

**H.**    **Class VIII - Flagstar Financial & Leasing, LLC ("Flagstar").**

(1)    Classification.    The Debtor is a party to a certain Retail Installment Sale Contract with Volvo Financial Services, a division of VFS US, LLC ("VFS") dated October 19, 2021, for the purchase of a 2017 Prevost H3-45 bearing VIN ending in 1069, which was subsequently assigned to Flagstar Financial & Leasing, LLC pursuant to a Master Assignment Agreement and accompanying Schedule dated November 28, 2023 (the "Flagstar Contract").  This loan is secured by a properly perfected purchase money lien on the subject vehicle.  As of the date of this plan filing, Flagstar has not filed a proof of claim.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.    This obligation shall be treated as a fully secured obligation of the Debtor. Flagstar shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor shall amortize and pay Flagstar's claim over five (5) years, with interest accruing at a fixed rate equal to 4.27%.  Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $4,134.98.

**I.**    **Class IX- Stearns Bank, N.A. ("Stearns Bank").**

(1)    Classification.    The Debtor is a party to a certain Equipment Finance Agreement with Stearns Bank, N.A. dated April 28, 2025, for the purchase of a 2025 Mercedes Sprinter bearing VIN ending in 8222. This loan is secured by a properly perfected purchase money lien on the subject vehicles.  As of the date of this plan filing, Stearns Bank has not filed a proof of claim.

(2)    Impairment.    This class will be impaired.

(3)      Treatment.  This obligation shall be treated as a secured claim in the amount of $140,000.00. Stearns Bank shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor shall amortize and pay Stearns Bank's claim over six (6) years, with interest accruing at a fixed rate equal to 4.27%.  Monthly payments shall commence on the fifteenth (15th) day of the first full month following the Effective Date, in the approximate amount of $2,207.59. The balance of Stearns Bank's claim shall be treated as a general unsecured claim in Class X herein.

**L.      Class X– General Unsecured Claims.**

(1)      Classification.   This class consists of all allowed, undisputed, non-contingent, general unsecured claims listed in the Debtor's petition or as otherwise approved by the Court.

(2)      Impairment.  This class will be impaired.

(3)      Treatment.  Claimants in this Class will receive distributions on a *pro-rata* basis after payment to creditors in all senior classes in accordance with the various treatments set forth herein.  The Debtor shall pay $250,000.00 over five (5) years, payable in quarterly installments. Payments shall commence on the fifteenth (15th) day of the third (3rd) full month following the Effective Date, and continue thereafter quarterly for a total term of five (5) years (20 quarterly payments). For feasibility purposes, the Debtor estimates a quarterly payment amount to this Class totaling $12,500.00.

**M.      Class XIII – Equity Security Holders.**

(1)      Classification.  This class consists of the sole shareholder of the Debtor as follows:

R. Vance Hoover – 100% shareholder interest

(2)      Impairment.  This class will be unimpaired.

(3)      Treatment.  The equity security holder listed above shall retain his ownership interest upon confirmation of the Plan.

## V.      ALLOWANCE AND DISALLOWANCE OF CLAIMS

**A.      Claims Subject to Objection**

All Claims and security interests listed herein are, unless expressly accepted or consented to herein, subject to objections by the Debtor or any party in interest.  All Disputed Claims shall be litigated to final order, settled, or withdrawn.  The Debtor shall have authority to settle Disputed Claims without approval of the Court.

**B.      Claims Objection Bar Date**

Unless a different date is set by order of the Court, all objections to Claims shall be filed by the later of: (i) 60 days after the Effective Date; (ii) 30 days after a timely proof of claim is filed; or, (iii) such later date as the Court may establish upon a motion by the Debtor, which may be approved without notice to any party-in-interest or hearing, provided however, that the Debtor may object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims at any time.

### C.    No Distributions on Disputed Claims

Except as may be otherwise agreed with respect to any Disputed Claim, no distribution under this Plan shall be made with respect to any portion of a Disputed Claim until such Disputed Claim shall have become an Allowed Claim or settled by the Debtor.  Notwithstanding any date specified earlier in this Plan for the commencement of payments under this Plan on any particular Claim, if an objection to a Claim has been filed but not resolved at the time distribution on such Claim would otherwise commence if such Claim were an Allowed Claim, the first payment on such Claim under this Plan shall commence on the first day of the second month following the allowance of the Claim by Final Order, withdrawal of objection, or other resolution or compromise.  If commencement of payments on any Claim are delayed under this Article, any payments subsequent to the first payment otherwise due under this Plan before the delayed commencement date shall, at the option of the Debtor in its sole discretion, be deferred to the end of the payment term and the payment term shall be extended so as to allow such payment to be made on the same periodic basis as the immediately preceding payments under the Plan.

### VI. MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

A.    The Debtor shall make payments under the Plan from cash on hand and revenue generated by the continued operation of the Debtor's business.  The Debtor shall deposit all revenue into a designated bank account and disburse all funds in accordance with the terms of this Plan.  The disbursements to be made under this Plan will consist of cash payments which shall be made towards (i) any Allowed Administrative Claims, (ii) any Allowed Professional Fee Claims, which are expected to consist of the fees and expenses of the Debtor's attorney,  (iii) any Allowed Priority Tax Claims, (iv) any Allowed Priority Non-Tax Claims, (v) Allowed Secured Claims, and (vi) any Allowed General Unsecured Claims.

B.    Liquidation of Assets.  The Debtor does not intend to liquidate any assets under the Plan.

C.    De Minimis Distributions.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an Allowed Claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

D.    Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim or interest and the Disbursing Agent shall not attempt to make any further distribution to such holder of the claim.  Undistributed property shall be returned

to the Debtor for distribution in accordance with the Plan.

E.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

F.    The Debtor shall take such other action as is necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

G.    Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

H.    <u>Default</u>. If not otherwise specified within each class treatment, the Debtor shall have thirty (30) days to cure any payment default upon receipt of written notice of such default from the creditor to Debtor as provided herein.

I.    Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and, any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs, as well as all claims the Debtor may have against Meditech as described in the Disclosure Statement.

J.    Administrative Claims unpaid on the Effective Date will be paid from the Debtor's continued income.

K.    All fee applications (with the exception of applications under 11 U.S.C. § 506(c) and fee applications by counsel for the Debtor) and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date; provided however, that the Debtor retains the right to extend this deadline upon a showing of cause, and the Debtor may object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims at any time.  The statute of limitations of any and all Bankruptcy Causes of Action, and actions in State or Federal Court, not hereinbefore filed, shall be governed by their respective statutes of limitations, 11 U.S.C. § 108(a)(2), or 11 U.S.C. § 546(a)(1)(A), whichever deadline shall be later.  Further, no professional shall be required to seek Court approval for fees incurred following the entry of the Order Confirming Plan.

13

L.     <u>Revesting of Assets</u>.  The revesting of assets in the Reorganized Debtor shall be subject to the rights and duties of the Debtor and the Reorganized Debtor as provided in this Plan. As of the Effective Date, the Plan shall revest in the Debtor all of the assets of the Debtor and without further documentation, all of the assets and assumed liabilities of the Debtor, together with all of the related rights, powers, obligations and duties of the Debtor as provided by the Bankruptcy Code, this Plan, all orders of the Court, all equitable rights and all laws shall be transferred to the Reorganized Debtor as a successor of the Debtor in all things.

M.     <u>Revocation of Plan</u>.  The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

N.     <u>Injunction</u>.  From and after the Confirmation Date, all holders of "Claims" or "Interests" (including, without limitation, Secured Claims, General Unsecured Claims, and all Priority Claims) against the Debtor and the Debtor-in-Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Property, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Property, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim or Interest may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims and Interests shall be entitled to enforce their rights under the Plan.

O.     <u>Authority of the Debtor</u>.  The Debtor shall have the authority to implement any term or provision of this Plan.  To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry out any and all acts necessary to fulfill the terms of the Plan.

P.     <u>Exemption from Transfer Taxes</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.  All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sale by the Debtor of owned property pursuant to Section 363(f) of the Bankruptcy Code and the

assumption, assignment and sale by the Debtor of unexpired leases of non-residential Property pursuant to Section 365(a) of the Bankruptcy Code, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

## VII. <u>PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS</u>

A.    <u>Preservation of Claims and Avoidance Actions Generally</u>.    Notwithstanding anything to the contrary in the Plan, the provisions of the Plan and/or Confirmation Order are not intended to have, and shall not have, any *res judicata* or collateral estoppel effect with respect to any Bankruptcy Causes of Action that the Debtor may assert, regardless of whether and to what extent such Bankruptcy Causes of Action are specifically described in the Plan or any Disclosure Statement. Unless any Bankruptcy Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such Bankruptcy Causes of Action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply to such Bankruptcy Causes of Action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, without limitation, all pre-petition claims and any and all post-petition claims that the Debtor could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of the Court, including all rights to assert and pursue any Bankruptcy Causes of Action. Finally, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs, as well as all claims the Debtor may have against Meditech as described in the Disclosure Statement.

B.    <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>. All transactions avoided or otherwise set aside pursuant to §§ 510(c), 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the estate pursuant to § 551 and applicable case law. All litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries shall be treated as an Administrative Claim under Section III above.

C.    <u>Preservation of § 506(c) Claims</u>. Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VIII. PROVISIONS GOVERNING DISTRIBUTIONS

A.    <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.    <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date, unless otherwise stated herein.

C.    <u>Cure Period</u>.  The failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an event of default, unless and until the Reorganized Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, the Reorganized Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified in this Plan or as otherwise set forth in separate Motions before this Court, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or otherwise approved by Orders of the Court are hereby specifically rejected.  Further, this provision does not reject any verbal or written agreement listed below.

All of the following agreements are hereby assumed:

1.  Lease of 2024 VanHool CX-45 bearing VIN ending in 4316 with Wells Fargo, N.A.
2.  Lease of 2024 VanHool CX-45, bearing VIN ending in 4376 with Customers Commercial Finance, LLC
3.  Executory Contract for Vehicle Fleet Services with Samsara, Inc.
4.  Executory Contract for Diesel Exhaust Fuel with Couch Oil Company
5.  Lease with Pine State, LLC of Non-Residential Real Property located at 2531 Schieffelin Road, Apex, NC
6.  Tire Lease Agreement with Bridgestone Americas Tire Operations, LLC
7.  Equipment Lease with First Citizens Bank & Trust Company

## X. ACCEPTANCE OR REJECTION OF PLAN
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)    Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court

17

must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## XI. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII. EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, confirmation of the Plan vests all assets and property of the estate in the Reorganized Debtor.

B. Injunction. From and after the Confirmation Date, except as otherwise provided in Sections 1141(d)(3), the Plan, or the Confirmation Order, all holders of "Claims" (including without limitation Secured Claims, General Unsecured Claims, all Priority Claims and any other claim, equity interest, or other debt or liability) against the Debtor and the Debtor-in-Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Debtor's assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Debtor's assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan, the Plan does not release or waive any claims the Debtor may have against any party in interest.

## XIII. APPLICATION OF PLAN PAYMENTS

A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall

be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorney's fees post-petition under § 506(b) of the Bankruptcy Code, such creditor must file an application in accordance with the Bankruptcy Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

## XIV. RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.    To determine any and all objections to the allowance of claims and/or interests;

2.    To determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

3.    To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.    To determine all controversies and disputes arising under or in connection with the Plan;

5.    To determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.    To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.    To determine such other matters and for such other purposes as may be provided for in the confirmation order;

8.    To determine all disputes regarding property of the estate;

9.    To establish and adjust procedures for the orderly administration of the estate;

10.    To determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.    To replace the Debtor-in-Possession with a Trustee for good cause shown.

## XV.  **MISCELLANEOUS PROVISIONS**

A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.    <u>Severability</u>.  If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

C.    <u>Captions</u>.  The headings and captions contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

D.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

E.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

F.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(this space intentionally left blank)

Respectfully submitted, this the 3rd day of December, 2025.

**HENDREN, REDWINE & MALONE, PLLC**

s/ <u>Lydia C. Stoney</u>
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Stoney (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
         rredwine@hendrenmalone.com
         bwaller@hendrenmalone.com
         lstoney@hendrenmalone.com
COUNSEL FOR THE DEBTOR


**SOUTHERN EXPRESS, INC.**

s/ <u>R. Vance Hoover</u>
R. Vance Hoover, President
